UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ASHLEY BROOK SMITH, | |
|---|---|
| Plaintiff, | No. 3:17-CV-1586-MPS |
| v. | |
| JRK RESIDENTIAL GROUP, INC., | |
| Defendant. | |

**RULING ON MOTION TO COMPEL ARBITRATION**

**I.     Introduction**

*Pro se* Plaintiff, Ashley Smith, sued her former employer, JRK Residential Group, Inc. ("JRK"), for wrongful termination. Smith alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act, C.G.S. §§ 46a-60(a)(1) and 46a-60(a)(4) ("CFEPA"). Specifically, Smith alleges that she was discriminated against because of her sex and Christian lifestyle and that she was wrongfully terminated. JRK moves to stay litigation and compel arbitration of the claims, based on a Mediation and Arbitration Agreement signed by Smith and JRK.

For the following reasons, JRK's motion to compel arbitration and stay this action is hereby GRANTED.

**II.    Background**

The following recitation of the facts is taken from Smith's complaint, along with the exhibits attached to the parties' briefs

JRK is an affiliated entity of JRK Property Holdings, Inc. (ECF No. 14-2 at ¶ 3, 5). On November 23, 2015, JRK hired Smith as the leasing agent for Century Hills Apartments—a 544-unit multi-family property in Rocky Hill, Connecticut. (ECF No. 14-1 at 2; ECF No. 1-1 at ¶¶ 2-6). Three weeks later, JRK terminated Smith's employment. (ECF No. 1-1 at ¶ 41). The parties part ways on the reason for Smith's termination. Smith claims that JRK terminated her based on her sex and religious beliefs in violation of Title VII and CFEPA. (*Id.* at ¶ 16, 50-51, 59, 60). JRK claims Smith was terminated due to unsatisfactory performance. (ECF No. 14-1 at 2).

Upon her hiring, Smith signed JRK Property Holdings, Inc.'s Mediation and Arbitration Agreement ("Agreement"). (ECF No. 14-2, Ex. A at 7 ("The Agreement")). The Agreement provided in relevant part that the parties "agreed to use mediation and binding arbitration as the exclusive forums for resolving the disputes and claims covered by this Agreement." *Id.* The Agreement covered "[a]ny claim that could be asserted in court . . . for which the employee has an alleged cause of action, including without limitation the following claims: . . . (b) tort, (c) discrimination including, but not limited to, discrimination based on sex . . . [and] religion . . . , (d) wrongful discharge, . . . and/or (g) violation of any federal, state or other governmental law, statute, regulation or ordinance, and whether based on statute or common law." *Id.* at 8. The Agreement also covered "[c]laims made against JRK [Property Holdings Inc.]" or "any of its subsidiary or affiliated entities . . . ." *Id.*

Following Smith's termination, she filed this action against JRK in Connecticut Superior Court, alleging two counts of wrongful termination arising out of alleged violations of Title VII

and CFEPA. (*See* ECF No. 1-1). JRK subsequently removed the case to this Court, (*see* ECF No. 1), and filed this motion to compel. (ECF No. 14).

## III. Discussion

### A. Legal Standard

The Federal Arbitration Act ("FAA") provides that "a written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (holding that the FAA "manifest[s] a liberal federal policy favoring arbitration agreements." (internal quotation marks omitted)). Under Section 4 of the FAA, a court must compel arbitration if it finds that there has been a "'failure, neglect, or refusal' of any party to honor the agreement to arbitrate." *Phillips v. Cigna Invs.*, 27 F. Supp. 2d 345, 349 (D. Conn. 1998) (quoting 9 U.S.C. §4). Further, the Second Circuit has echoed the Supreme Court's recognition of the FAA's policy favoring the strict enforcement of arbitration agreements, instructing that "any analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements." *Doctors Assocs. v. Hamilton*, 150 F.3d 157, 162 (2d Cir. 1998).

To determine whether parties are compelled to arbitrate, courts consider four factors: "(1) whether the parties agreed to arbitrate; (2) the scope o[f] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and

(4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." *McCallister v. Conn. Renaissance Inc.*, 496 Fed. App'x 104, 106 (2d Cir. 2012). Finally, the party seeking to compel arbitration bears the "burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Helenese v. Oracle Corp.*, No. 3:09-cv-351 (CFD), 2010 U.S. Dist. LEXIS 15071, at *8 (D. Conn. Feb 19, 2010).

### B. Smith Must Arbitrate Her Claims Against JRK

The FAA governs the Agreement because the Agreement involves a written provision regarding a transaction involving commerce. *See* 9 U.S.C. § 2. The employment transaction in this Agreement involves commerce because JRK owns and operates residential facilities in ten states, occasionally assigns employees to work in multiple states, and purchases supplies for its business from a variety of states. (ECF No. 14-1 at 5-6). Thus, I apply the Second Circuit's four-factor test for determining whether parties are compelled to arbitrate.

#### 1. The Parties agreed to arbitrate Smith's claims

"In deciding whether parties agreed to arbitrate in accordance with the FAA, courts . . . generally apply ordinary state-law principles that govern the formation of contracts." *Morales v. Rent-A-Center*, 306 F. Supp. 2d 175, 180 (D. Conn. 2003). However, "in enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration agreements and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Therefore, the only contract defenses that can invalidate an arbitration agreement without overriding the FAA are "generally applicable contract defenses" such as fraud, duress, or unconscionability. *Morales,* 306 F. Supp. 2d at 181.

In the present case, there is little question that the parties agreed to arbitrate all claims relating to Smith's employment with JRK. On November 23, 2015, as a condition of her employment, Smith signed the Agreement with JRK Property Holdings, Inc. which included plain language detailing the parties' intent to submit a broad range of claims to arbitration. The Agreement provided that "certain disputes or claims that may arise from your employment with JRK [Property Holdings, Inc.] or the termination of your employment must . . . be submitted for resolution to . . . binding arbitration." *Id.* The Agreement also noted the following: "In agreeing to submit certain employment disputes or claims to resolution by private mediation and (if necessary) binding arbitration, you are doing so in exchange for rights to which you are not otherwise entitled—namely, your employment as a JRK employee and the more expeditious resolution of employment disputes." (The Agreement at 7). Further, the Agreement provided that JRK "may use [the] Agreement to enforce the terms . . . including . . . requesting a court . . . dismiss the lawsuit or action." *Id.* Finally, neither the Agreement nor the facts alleged in the complaint suggest fraud, duress, or unconscionability.[1] Thus, by signing the Agreement, Smith entered into an enforceable agreement to arbitrate.

---

[1] In her objection to JRK's motion, the plaintiff does not contest that she signed the Agreement or that her claims are arbitrable. Rather, she contends that the company had "no regard for [her] effort or cost when they terminated her employment only three weeks after it had begun." (ECF No. 20). The plaintiff also contends that JRK "has had more than enough time to make reparations or [to] enter into arbitration." *Id.* Even if I liberally construed Smith's argument as one premised on unconscionability, it would not change my conclusion regarding the validity of the agreement. To prove unconscionability under Connecticut law, a party must demonstrate that a contract is both procedurally and substantively unconscionable. *See D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (savings clause in Section 2 of the FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (internal quotation marks omitted)). "Substantive unconscionability focuses on the 'content of the contract,' as distinguished from procedural unconscionability, which focuses on the 'process by which the allegedly offensive

## 2. Smith's claims fall within the scope of the Agreement

"Federal policy favors arbitration of disputes, and therefore courts read arbitration clauses broadly, with 'any doubts concerning the scope of arbitrable issues [being] resolved in favor of arbitration.'" *Morales*, 306 F. Supp. 2d at 182 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)). Such agreements are routinely upheld in the context of employment contracts. In *McCallister v. Conn. Renaissance Inc.*, plaintiff brought claims against his employer for alleged violations of Title VII of the Civil Rights Act of 1964. 496 Fed. App'x 104, 105 (2d Cir. 2012). As a condition of his employment, the plaintiff signed an arbitration agreement providing that the parties agreed to resolve all claims and controversies through final and binding arbitration. *Id.* at 106. Following his subsequent termination, the plaintiff alleged violations of Title VII and the Americans with Disabilities Act; the district court granted the defendant's motion to stay proceedings and compel arbitration. *Id.* at 105. On appeal, the Second Circuit affirmed, holding that the "plain language" of the arbitration agreement covered the plaintiff's claims. *Id.* at 106-07.

Similarly, in *Circuit City Stores v. Adams*, the Supreme Court held that an employee's agreement to arbitrate discrimination claims was enforceable. 532 U.S. 105, 122-23 (2001). The

---

terms found their way into the agreement.'" *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011) (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 87 n. 14 (1992) (quoting J. Calamari & J. Perillo, Contracts § 9–37 (3d ed.)). To meet this standard, a "party usually must show both that there was an absence of meaningful choice on the part of that party, and that the terms of the agreement were unreasonably favorable toward the other party." *Id.* Smith has not demonstrated that she lacked any choice in signing the Agreement. Further, she cannot demonstrate that its terms were unreasonably favorable toward JRK given that the Agreement bound both parties to arbitrate all claims, that any arbitration proceeding would take place in the city and state of her employment, and that the arbitrators would have to apply governing law (including the governing law of the jurisdiction where the claimant is employed). (*See* The Agreement at 7, 9).

Court made clear the wide breadth of the FAA by noting "we have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context." *Id.* at 123.

Smith's claims fall within the scope of the Agreement because they relate to her employment with JRK. The Agreement not only applies to disputes arising out of Smith's employment, but also explicitly lists certain claims that are to be resolved by arbitration. This list includes "any claim . . . for which the employee has an alleged cause of action . . . including . . . discrimination . . . based on . . . race . . . age, religion . . . and/or violation of any federal, state, or governmental law, statute, regulation, or ordinance." (The Agreement at 7). Further, Smith's claims against JRK fall within the scope of the Agreement because JRK is a "subsidiary or affiliated entit[y]" of JRK Property Holdings, Inc. *Id.* at 8; (ECF No. 14-2 at ¶ 5). As such, Smith's claims of violations of Title VII and CFEPA fall within the scope of the Agreement and are subject to arbitration.

### 3. Smith's claims can be resolved through arbitration

The next factor in determining the applicability of an arbitration agreement is whether Congress intended any federal statutory claims asserted to be nonarbitrable. *McCallister*, 496 Fed. App'x 104, 106 (2d Cir. 2012). In *Desiderio v. NASD*, the Second Circuit held that Congress did not intend to preclude the arbitration of Title VII claims. 191 F.3d 198, 204-06, (2d Cir. 1999). Since *Desiderio*, the Second Circuit has repeatedly held that agreements to arbitrate Title VII claims are enforceable. *See e.g., Ragone v. Atlantic Video*, 595 F.3d 115, 117, 120 (2d Cir. 2010) (holding that the arbitration agreement in question was valid and enforceable as to Ragone's claims because the agreement explicitly covered "claims of sexual harassment."); *Gold*

*v. Deutsche Aktiengesellschaft*, 365 F. 3d 144, 150 (2d Cir. 2001) (holding that Gold's Title VII claims were arbitrable). Thus, Smith's federal statutory claim under Title VII is arbitrable.[2]

### 4. The lawsuit will be stayed in this Court pending the conclusion of arbitration

The final factor for consideration is whether the lawsuit should be stayed pending the conclusion of arbitration or dismissed. Under Section 3 of the FAA, the Court,

> upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The Second Circuit has held that an action must be stayed if all claims have been referred to arbitration and a stay has been requested. *Katz v. Cellco P'Ship*, 794 F.3d 341, 347 (2d. Cir 2015) ("[W]e conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."). In the present case, all of the plaintiff's claims have been referred to arbitration and JRK has requested that the court stay the action. (*See* ECF No. 14 at 2). Thus, the Court will stay this action and administratively close this case (but not enter judgment) until arbitration has concluded.

## IV. Conclusion

For the reasons discussed above, JRK's Motion to Compel Arbitration and Stay the Action (ECF No. 14) is hereby GRANTED. The clerk is instructed to close this case but not enter judgment. Any party may move to reopen this case within 30 days of completion of the arbitration and the case shall be reopened upon the filing of such a motion. The moving party

---

[2] Smith's CFEPA claim is a state statutory claim and is therefore not implicated by the third part of the test to determine whether a claim must be arbitrated.

may also seek the lifting of the stay and the entry of judgment or may seek to initiate further proceedings in this action.

IT IS SO ORDERED.

　　　　　　　　　/s/

Michael P. Shea, U.S.D.J.

Dated:　　　Hartford, Connecticut

　　　　　　　February 8, 2018